

FILED
7/20/2018
EAA
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**RECEIVED**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

JUN 2 6 2018

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Valerie Tolson )
)
_____ )
)
Plaintiff(s), )
)
v. )
)
Richard Ponce, Miriam Velazquez, )
Carol Hamburger, )
Sarah Miller, Ramona Hallinan, + )
City of Chicago )
)
Defendant(s). )

1:18-cv-04452
Judge Ronald A. Guzman
Magistrate Judge Sheila M. Finnegan

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is Valerie Tolson of the county of Cook in the state of Illinois.

3. The defendants are Richard Ponce, Miriam Velazquez, Carol Hamburger, Sarah Miller, Ramona Hallinan, City of Chicago, whose street address is 333 S. State, Rooms 320, 3X0 + 121 N. LaSalle, Suite 700.
(city) Chicago (county) Cook (state) Illinois (ZIP) 60604 60601

(Defendant's telephone number) (312) - 744 - 9029

4. The plaintiff sought employment or was employed by the defendant at (street address)
333 S State (city) Chicago
(county) Cook (state) IL (ZIP code) 60604

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5.   The plaintiff [*check one box*]

(a)   ☐   was denied employment by the defendant.

(b)   ☑   was hired and is still employed by the defendant.

(c)   ☐   was employed but is no longer employed by the defendant.

6.   The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) _MAY_, (day) _31_, (year) _2017 and is ongoing_

7.1   (*Choose paragraph 7.1 or 7.2, do not complete both*.)

(a)   The defendant is not a federal governmental agency, and the plaintiff [*check one box*] ☑ *has*  ☐ *has not* filed a charge or charges against the defendant

asserting the acts of discrimination indicated in this complaint with any of the

following government agencies:

(i)   ☑ the United States Equal Employment Opportunity Commission, on or about

(month) _November_ (day) _29_ (year) _2017_.

(ii)   ☐ the Illinois Department of Human Rights, on or about

(month) _N/A_ (day) _N/A_ (year) _N/A_.

(b)   If charges *were* filed with an agency indicated above, a copy of the charge is

attached. ☑ Yes, ☐ No, **but plaintiff will file a copy of the charge within 14 days**.

It is the policy of both the Equal Employment Opportunity Commission and the Illinois

Department of Human Rights to cross-file with the other agency all charges received. The

plaintiff has no reason to believe that this policy was not followed in this case.

7.2   The defendant is a federal governmental agency, and

(a)   the plaintiff previously filed a Complaint of Employment Discrimination with the

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

defendant asserting the acts of discrimination indicated in this court complaint.

☐ Yes (month) _N/A_ (day) _N/A_ (year) _N/A_

☐ No, did not file Complaint of Employment Discrimination

(b)  The plaintiff received a Final Agency Decision on (month) _N/A_

(day) _N/A_ (year) _N/A_.

(c)  Attached is a copy of the

(i)  Complaint of Employment Discrimination,

☐ Yes  ☐ No, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☐ Yes  ☐ N0, but a copy will be filed within 14 days.

8.  *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a) ☐  the United States Equal Employment Opportunity Commission has not

issued a *Notice of Right to Sue.*

(b) ☑  the United States Equal Employment Opportunity Commission has issued

a *Notice of Right to Sue*, which was received by the plaintiff on

(month) _MARCH_ (day) _31_ (year) _2018_ a copy of which

*Notice* is attached to this complaint.

9.  The defendant discriminated against the plaintiff because of the plaintiff's [*check only*

*those that apply*]:

(a) ☐  Age (Age Discrimination Employment Act).

(b)  Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(c) ☒ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☒ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

(H) RETALIATION

10.    If the defendant is a state, county, municipal (city, town or village) or other local

governmental agency, plaintiff further alleges discrimination on the basis of race, color, or

national origin (42 U.S.C. § 1983).    YES

11.    Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims

by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42

U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the

Rehabilitation Act, 29 U.S.C. § 791.

12.    The defendant [*check only those that apply*]
(a) ☐    failed to hire the plaintiff.

(b) ☐    terminated the plaintiff's employment.

(c) ☐    failed to promote the plaintiff.

(d) ☐    failed to reasonably accommodate the plaintiff's religion.

(e) ☒    failed to reasonably accommodate the plaintiff's disabilities.

(f) ☒    failed to stop harassment;

(g) ☒    retaliated against the plaintiff because the plaintiff did something to assert rights
         protected by the laws identified in paragraphs 9 and 10 above;

(h) ☒    other (specify): Defendent Engaged in a Pattern of Threatslousy

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Retaliation, Write ups, Increased Scrutiny over Work
Performed by Plaintiff, Unreasonable delay in granting Reasonable
Accommodation (8 Months) Suspensions, Bullying,
Verbal Attacks, Lying, Provoking, Resulting in Emotional
distress.

13. The facts supporting the plaintiff's claim of discrimination are as follows:

Emails Regarding Status of Reasonable Accommodation, and
write ups that began after I applied for FMLA (EFFECTIVE DATE
OF MARCH 27, 2017), Resulting in Bullying, Suspension, Retaliation
Intimidation And Violence in the workplace; These action
Continue. (See Attached Complaint)

14. **[AGE DISCRIMINATION ONLY]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☒ Yes ☐ No

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [**check only those that apply**]

   (a) ☐ Direct the defendant to hire the plaintiff.

   (b) ☐ Direct the defendant to re-employ the plaintiff.

   (c) ☐ Direct the defendant to promote the plaintiff.

   (d) ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

   (e) ☒ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

   (f) ☒ Direct the defendant to (specify): Rescind Suspension (7 days)
Remove write ups from file, Cease & Desist Attacks,
Retaliation + Harassment, and any And All

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

other Relief Allowed Under the Law.

(g) ☒ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☒ Grant such other relief as the Court may find appropriate.

_Valerie Olson_
(Plaintiff's signature)

_Valerie Olson_
(Plaintiff's name)

_1649 East 50th St. #20E._
(Plaintiff's street address)

(City) _Chicago_ (State) _Il_ (ZIP) _60615_

(Plaintiff's telephone number) (773) – 344– 6850

Date: _6/25/2018_

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **VALERIE TOLSON,** ) | |
|       **Plaintiff,** ) | |
| **v.** ) | |
| ) | |
| **RICHARD PONCE,** ) | |
|       **Individually and in His Official Capacity as** ) | |
|       **Deputy Director** ) | |
| **MIRIAM VELAZQUEZ** ) | |
|       **Individually and in Her Official Capacity as** ) | |
|       **Manager of Accounting** ) | |
| **SARAH MILLER** ) | |
|       **Individually and in Her Official Capacity as** ) | **JURY TRIAL DEMANDED** |
|       **Manager of Payment Processing** ) | |
| **RAMONA HALLIHAN** ) | |
|       **Individually and in Her Official Capacity as** ) | |
|       **Deputy Director of Human Resources for** ) | |
|       **Finance & Administration** ) | |
| **CAROL HAMBURGER** ) | |
|       **Individually and in her Official Capacity as** ) | |
|       **Managing Deputy Comptroller** ) | |
| **CITY OF CHICAGO** ) | |
|       **DEFENDANTS** ) | |
| ) | |

## COMPLAINT AT LAW

COMES NOW Plaintiff, VALERIE TOLSON, Pro Se, and complaining of the

Defendants, Richard Ponce, Miriam Velazquez, Sarah Miller, Ramona Hallihan, and the

CITY OF CHICAGO ("the City"), states as follows:

## JURISDICTION AND VENUE

1.    This action is brought pursuant to the Family and Medical Leave Act of 1993

1

(FMLA), 29 U.S.C. 2601 *et seq,* as amended, Title VII of the Civil Rights Act. of 1964, and

the Americans with Disabilities Act, 42 U.S.C. §§ 2000e et *seq.* ("ADA TItle II as amended).

This Court has jurisdiction of this action under 29 U.S.C. 2617 and 28 U.S.C. § 1343.

      2.     Venue is proper in this District and Division because the unlawful employment

action(s) alleged herein were committed within the Eastern District of Illinois.

## **PARTIES**

1.     CITY OF CHICAGO ("the City") is a Municipal Corporation organized in the County

of Cook, State of Illinois.

2.     At all times relevant to this litigation, Valerie Tolson, African American, was a

resident of Chicago, Illinois, earned a Bachelors Degree in Business Administration in May

1996, a Masters Degree in Information Systems Management in October 2004 and a Masters

Degree in Accounting & Finance in April 2012.

3.     At all times relevant to this litigation, Richard Ponce, Mexican, was a resident of

Chicago, Illinois.

4.     At all times relevant to this litigation, Miriam Velazquez, Puerto Rican was a resident

of Chicago, Illinois.

5.     At all times relevant to this litigation, Sarah Miller, Caucasian, was a resident of

Chicago, Illinois.  Sarah began working in the Administrative Offices of Payment Processing

on, or approximately on, August 8, 2017.

6.     At all times relevant to this litigation, Carol Hamburger, Jewish, was a resident of

Chicago, Illinois.

7.     At all times relevant to this litigation, Ramona Hallihan, Human Resources Deputy

Director for the Division of Finance & Administration, of Indian Descent, was a resident of Chicago, Illinois.

8.     At the time of the unlawful employment practices alleged herein, Defendant City of Chicago was and continues to be an employer within the meaning of the statutes pursuant to which this action is brought.

9.     At the time of the unlawful employment practices alleged herein, Defendants Richard Ponce, Miriam Velazquez, Sarah Miller, and Ramona Hallihan were employed, and continue to be employed, in Management positions for the City of Chicago within the meaning of the statutes pursuant to which this action is brought.


## FACT

### Plaintiff's Work Performance

1.     Valerie Tolson, African-American female, began her employment with the City of Chicago as a Senior Budget Analyst, in the Office of Budget & Management on or about February 4, 2008.

2.     In approximately 2007, Tolson was interviewed for the position of Senior Budget Analyst by then Assistant Budget Director Erin Keane and Peter Gribble.  The decision to hire Tolson as based on those interviews.

3.     Budget Office employees are not covered/represented by a union.

4.     At all times during her tenure in the Budget Office, Tolson performed within the employer's reasonable expectations.

5.     Tolson began working in the Payment Processing Division of Finance & Administration on September 9, 2014.

3

6.     Upon her reinstatement, 3 employees out of 11 employees (Miriam Velazquez, Richard Ponce, and Tolson) working in the Administrative Office were staffed into non-union titles. The other 8 workers were union workers.

7.     On September 9, 2014, Tolson's first day in the Payment Processing Division, Plaintiff was informed by a number of the 11 employees that, prior to her arrival, Miriam Velazquez had held a meeting with her staff and informed the staff that Tolson was over-qualified to work in Payment Processing.

8.     On September 9, 2014, Tolson's fist day, in Payment Processing, seven (7) of the eleven (11) employees told Tolson that she was not in the Union and could not do their work; that she was there to take their jobs and they were not going to let her take their jobs.

9.     On Tolson's first day of work in the Payment Processing Division, Miriam Velazquez told Tolson that the employees were threatening to file a grievance against her if she (Miriam) gave Tolson their work.

10.     The racial makeup in Payment Processing's administrative office on September 9, 2014, was 3 Blacks/African Americans, 1 worker from India, 2 Vietnamese/Asian, 3 Mexican and 2 Puerto Rican, for a total of 11 employees.

11.     As of this writing, June 23, 2018, Payment Processing administrative offices, consists of 5 Mexicans, 6 Puerto Rican, 4 Blacks, 2 workers of Indian descent (India), and 1 Caucasian for a total of 18 employees.

12.     As of this writing, Defendant remains employed with Defendant and her current non-exempt title is Fiscal Policy Analyst.

13.     As of this writing, Erin Keane is now the Comptroller for the City of Chicago and the Department Head for the Department of Finance.

4

14.     During her employment within the Payment Processing Division, Defendant, Tolson

performed to Defendant's satisfaction according to the City's own legitimate standards of

evaluation.

15.     One of Tolson's co-workers/colleagues has reported, on numerous occasions, that

Tolson is a "great employee" with the Department of Finance and that co-worker has never

seen Tolson in a bad mood.

16.     Likewise, an Assistant to a Managing Deputy Director has commended Tolson, on

multiple occasions, on doing a Great Job.

17.     Numerous customers who have communicated their complaints regarding the service

they have received at the Payment Processing Division's payment sites have commended

Tolson on being able to transcribe their statements verbatim, and have often remarked how

glad they were that someone from the City of Chicago actually called them back, which, in

many cases, wasn't expected.


## Background of Tolson's Retaliation Claim

1.     On October 24, 2011, Tolson was terminated for residing outside of the City of

Chicago, and for other alleged violations of personnel rules.

2.     Tolson filed complaints with the Illinois Department of Labor (IDOL), alleging

violations of the Victims Economic Security & Safety Act and with the Equal Employment

Opportunity Commission, (EEOC) alleging Age and Race Discrimination.

3.     A hearing held before the IDOL determined that Tolson had been terminated in

violation of the Victims Economic Security & Safety Act.  Based on their final determination,

the IDOL ordered the City of Chicago to ***reinstate*** Tolson into a comparable position, or her

former position and pay damages equal to lost wages (covering the approximate period of October 24, 2011–August 31, 2013) OR pay 2 years of lost wages/damages and one (1) year of front pay (covering the approximate period of September 1, 2013–August 31, 2014) if no comparable position or if Tolson's former position did not exist.

4.      The City of Chicago alleged that there was no position to reinstate Tolson into and paid out the one year of front pay.

5.      Simultaneous with the IDOL hearings, and during the period of resolution, depositions were taken from Deputy Budget Director (at that time) Carol Hamburger of the Budget Office, Budget Director Alex Holt of the Budget Office and Investigator Kristopher Brown employed by the Inspector General's Office (IGO) for the City of Chicago.

6.      During depositions in the case of Tolson v City of Chicago (12-CV-5530), Budget Director Alex Holt admitted that the COC had hired a Senior Budget Analyst during the time period that the City alleged there weren't any positions to reinstate Tolson into.  Based of that deposition, Tolson petitioned the courts for reinstatement to her former or a comparable position.

7.      On October 22, 2013, The Federal Court decided and ordered a second deposition of Kristopher Brown to be taken, with defendant, City of Chicago paying the court reporter and transcript costs, because defendant's counsel, in violation of the Federal Rules of Civil Procedure, had instructed Kristopher Brown not to answer questions posed by Plaintiff's attorney.

8.      IDOL, again, ordered the City of Chicago to reinstate Tolson.

9.      On September 9th, 2014, ***Tolson was not reinstated***, but ***was processed as a new hire*** to a position that paid the same wages as the former Budget Analyst position, that of Fiscal

Policy Analyst.

10.     Except for sick days, the vacation days that Tolson lost as a result of the unlawful termination were not reinstated, probably because Tolson was not reinstated.

11.     Tolson was processed as a new hire only after the front pay had been expended/exhausted.

12.     The important distinction between the Senior Budget Analyst and Fiscal Policy Analyst position is that the Fiscal Policy Analyst position is in a Union Shop and the Senior Budget Analyst position was not in a Union Shop.

13.     The American Federation of State, County & Municipal Employees (AFSCME) represents the majority of the employees who work in the Department of Finance.

14.     Tolson has no such representation that she can rely on at the City of Chicago.


**Plaintiff's FMLA & ADA Claim**

1.     In 2008, Tolson was diagnosed with a disability, and underwent multiple surgeries.

2.     In 2017, Tolson experienced a recurrence of the disability she had been diagnosed with in 2008.

3.     On April 11, 2017, Tolson applied for and was granted FMLA, effective March 27, 2017, the date Plaintiff applied for FMLA.

4.     Tolson was advised to request a reasonable accommodation in the form of a flexible schedule that would allow her to arrive to work early and/or work late in order to make up time during the week and possibly prevent loss of pay due to exhausted vacation and sick days/hours.

5.     Tolson applied for reasonable accommodation/flexible schedule on May 31, 2017.

7

6.      Other workers (non-union) within Payment Processing have flexible schedules and

didn't have to ask, do not have a disability, nor do they require a reasonable accommodation.

7.      Tolson followed up, through multiple emails, with Human Resources regarding the

RA status on numerous occasions, from May through November 2017, and was told on

multiple occasions that the Reasonable Accommodation was being discussed with "your

department."

8.      When asked "who" in my department, Tolson was told Richard Ponce and Tina

Consola.

9.      On November 29, 2017, Tolson filled a charge of Discrimination with the Equal

Employment Opportunity Commission as the Reasonable Accommodation request had been

pending for more than 6 months.

10.     The Disability Liaison approved the Reasonable Accommodation on November 14,

2017, 5-1/2 months after the request was made.

11.     The Department Head/Comptroller Erin Keane had not approved the Reasonable

Accommodation until December 15, 2017, 6-½ months after the request was made, and

approximately 2 weeks after Tolson had filed her charge with the EEOC.

12.     In a previous case, the Inspector General for the City of Chicago Case # 08-0460

determined that the City of Chicago Treasurer's Office failed to properly and/or timely

respond to a Treasurer's Office Employee's Request for Reasonable Accommodation . . . in

violation of the City of Chicago's Reasonable Accommodation Procedures and the City of

Chicago Personnel Rules.

13.     Upon receiving notification that her RA had been approved, Ramona Hallihan, Deputy

for Human Resources in Finance, told Tolson, that the RA was effective from the date the RA

was approved (which is a violation of ADA).

14.     Ramony Hallihan, later, in an email dated December 29, 2017, told Tolson that the RA

was retroactive to the date Tolson had applied, and that 8 hours of FMLA/vacation edits

would be added back to her vacation bank.

15.     Tolson has had to take unpaid leave for medical treatments, as she exhausted her sick

and vacation pay balances.

16.     Tolson asked Human Resources whether a personal day could be used in increments to

cover FMLA time off, and Valerie was told that the Personal Day had to be used as a full day.

17.     Despite her Doctor providing a statement that Tolson would be late every day for 6

weeks, Tolson was told that she needed to call in every day (See email dated February 26,

2018), because her department had a right to know where she was (harassment).

18.     There is a pattern within the City of Chicago of denying FMLA and ADA/RA with

several cases pending in the Federal Court regarding violations of FMLA and Reasonable

Accommodations resulting in harassment, retaliation, increased scrutiny over work/job

performance, bullying, increased incidents of write ups, suspensions and terminations,

especially as it relates to Black/African American (and mostly Female) workers.

19.     Since FMLA was granted in 2017, Tolson began to experience being lied on, harassed,

retaliated against, bullied, verbally attacked, subjected to increased scrutiny, and suspended

because exercised her rights under FMLA, ADA, and Title VII, and in violation of the City of

Chicago Personnel Rules XVII and XVIII (20, 23, 42 and 54).

20.     Tolson has been counseled for minor discrepancies, though the egregious conduct of

her co-workers was overlooked and ignored.  Tolson (and other staff in Tolson's department)

witnessed:

a. employees spending a great deal of their work time on personal calls;

b. employees surfing the internet, in violation of the City of Chicago Personnel Rules and Department of Finance Work Procedures;

c. management applying two different standards based on race/ethnicity/gender and personal preferences.

d. employees frequently cursing and using profanity in violation of City of Chicago Personnel Rules.

e. employees ignoring the notices and memos that are issued prohibiting the above-referenced conduct;

f. employees violating City of Chicago Personnel Rules and Department of Finance Work Procedures as the behavior patterns relate to noise levels, and verbally threatening, intimidating, bullying, provoking, swearing and profanity and for deputies, managers and supervisors being held accountable for administering departmental and City policies and procedures in an equitable, uniform and timely manner but not doing so.

21. Tolson's most recent performance evaluation score, given on May 18, 2018, was 2.4 out of a possible 5.0. Tolson has only received 2 performance evaluations in 4 years, and never a raise or salary increase.

22. Richard Ponce has a history of violence in the work place, along with a history of complaints being filed at various State and local agencies for intimidation, bullying, violence in the work place, provoking subordinates, and frequently with the help/assistance of his Managers.

### Additional Retaliation - Early Release for Thanksgiving

1.      On Thanksgiving Eve, Wednesday, November 22, 2017, Tolson was denied the opportunity for the two-hour early release for Thanksgiving because she would most likely be taking time off in December for treatment of her disability.  In years past, employees decided whether they would take advantage of the early release; Managers did not decide for employees.

2.      Not only did this instance discriminate against Plantiff because of a disability but none of the Blacks/African Americans were selected for early release for Thanksgiving, 2017. Early release was not permitted for Christmas 2017 or New Years 2018, as the holiday fell on Monday, and not the day before the holiday.

3.      The result was disparate treatment for Black/African Americans and resulted in disability discrimination for Tolson, who needed as much time off as she could get for treatment, recovery, and side effects of medication and surgery.

### Progressive Discipline

1.      Although Tolson allegedly reports to Miriam Velazquez, Manager of Accounting, Richard Ponce, Deputy, has engaged in a pattern of provoking, bullying, harassing, intimidating, and threatening Plaintiff.

2.      Richard has a reputation for provoking employees and engaging in patterns of verbal abuse resulting in the termination of employees, or some other negative outcome, as a result of Richard's management style.

3.      Tolson has been subjected to increased scrutiny, harassment, lies, embellishments, reprimands, defamation of character and suspensions as a result of engaging in protected

activities under ADA, FMLA, Title VII and in violation of COC Personnel Rules.

4.      According to the Inspector General's Office:

      a.   The IGO monitors the results of administrative appeals before the Human

           Resources Board (HRB) and grievance arbitrations concerning its disciplinary

           recommendations.

          i.   HRB Definition: A "three-member board is appointed by the Mayor and is

              charged with the responsibility of conducting hearings and rendering

              decisions in instances of alleged misconduct by career service employees.

              The Board also presides over appeal hearings brought about by disciplinary

              action taken against employees by individual city departments."

5.      I was not afforded a hearing before the HRB because, according to Finance &

Administration (F&A), no one in my classification has ever been suspended and/or requested

that the suspension be rescinded.

6.      Tolson received two (2) performance evaluations in 4 years, the most recent received

on May 21, 2018.  The score given was 2.4 out of a possible 5, which, given Tolson's

disability and treatment Tolson believes to be an unfair assessment of her performance.

7.      Over the course of 4 years, Tolson has not received a cost of living adjustment, or any

other merit raises or increases in salary.


### The City's Improper Delay of FMLA/Reasonable
### Accommodation and Retaliation

1.      The City engaged in multiple actions against Tolson that would dissuade and

discourage a reasonable employee from exercising her FMLA and/or ADA rights, including

harassment, increased scrutiny, multiple write-ups, bullying, verbal abuse, lies,

embellishments, exaggerations, and suspension.

2.     As a direct result of the City's delay in granting Tolson a Reasonable Accommodation, Tolson has had to take time off without pay.

3.     But for the City's unlawful conduct, Tolson would not have lost these earnings nor would her record have reflected the hours without pay, nor the write-ups and suspension.

4.     But for the City's retaliatory conduct in falsely accusing Tolson, Tolson would not have lost these earnings, nor would her disciplinary record have moved one step closer to termination under the City's progressive disciplinary policy.

5.     The City's actions against Tolson in singling her out and treating her less favorably than similarly situated employees is not stealthily concealed. Rather, it is open and obvious to many in Tolson's workplace.

6.     Likewise, the City's endorsement and encouragement of Tolson's disparate treatment is open and obvious. The City's failure to take any or prompt, remedial measures to prevent further instances of harassment and retaliation is open and obvious.

7.     There is a complete absence of organizational integrity within Tolson's workplace that prevents managers from targeting and destroying the careers of those who seek to exercise their protected rights under the law.

8.     Tolson has had to seek counseling and therapy in connection with her work to handle the unwarranted stress associated with her workplace.

9.     Defendant City of Chicago violated Plaintiff's rights under FMLA, ADA and Title VII, by delaying appropriate reasonable accommodation to the plaintiff despite her entitlement to such leave.

10.    Defendant City of Chicago violated Plaintiff's rights under the ADA by penalizing

13

Plaintiff for exercising her rights under the ADA.

11.     Defendant City of Chicago violated Plaintiff's rights under the Title VII by retaliating against her for exercising her rights under Title VII.

## PRAYER FOR RELIEF

**WHEREFORE, the Plaintiff respectfully requests that this Court:**

1.     Enter an immediate injunction against Defendants, their supervisors, employees and agents, ordering them to cease and desist from engaging in the aforementioned discriminatory and unlawful practices, including but not limited to, the issuance of any further discipline against Plaintiff until a review of the disciplinary process has been completed by this Court;

2.     Enter a permanent injunction against Defendants, their supervisors, employees and agents ordering them to cease and desist from engaging in the aforementioned discriminatory and unlawful practices, including but not limited to the use of Plaintiff's legitimate medical leave under FMLA and ADA as a basis for disciplining Plaintiff.

3.     Enter an order rescinding and completely removing all disciplinary actions taken by the City against Plaintiff, from January 1, 2008 to the present, which relate in whole or in part to Plaintiff's prior Budget Analyst position.

4.     Enter an order rescinding and completely removing all disciplinary actions taken by the City against Plaintiff, from January 1, 2008 to the present, which relate in whole or in part that are untimely, or relate to Plaintiff's unlawful termination and absences that Plaintiff took as a result of medical necessity.

5.     Enter a permanent injunction against Defendants, their supervisors, employees and agents ordering them to cease and desist from engaging in the aforementioned discriminatory

and unlawful practices, including but not limited to the excessive and unwarranted attempts to discipline Plaintiff for conduct that is miniscule by comparison to the egregious conduct of Plaintiff's coworkers that is ignored and overlooked by the City.

6.      Award the Plaintiff compensatory damages including, but not limited to, the costs and expenses incurred in the prosecution of this action, including prejudgment interest, expert fees and reasonable attorney's fees;

7.      Order whatever other equitable relief the court deems appropriate.


Respectfully submitted, VALERIE TOLSON


By: _____

Pro Se for Plaintiff


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 26th day of June 2018, a true and accurate copy of the forgoing Complaint at Law was served to:

Stephen R. Patton
Corporation Counsel for the City of Chicago
30 North LaSalle, Suite 1020
Chicago, IL 60602

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Valerie F. Tolson**
**1649 E. 50th St., Apt. 1-20E**
**Chicago, IL 60615**

From:  **Chicago District Office**
**500 W. Madison St.**
**Suite 2000**
**Chicago, IL 60661**

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a)*

| EEOC Charge No. | EEOC Representative | Telephone No.: |
|---|---|---|
| **440-2018-01331** | **Janel Smith, Investigator** | **(312) 869-8136** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☒  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit **may not be collectible.**

On behalf of the Commission

*Julianne Bow* _____          3/29/18 _____

**Julianne Bowman, District Director**                    (Date Mailed)

Enclosure(s)

cc:  **CITY OF CHICAGO DEPARTMENT OF FINANCE**

C/O  **Richard J. Cook, Asst. Corporation Counsel**
**City of Chicago Department of Law**
**30 N. LaSalle St., Suite 1040**
**Chicago, IL 60602**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2018-01331 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Valerie F. Tolson** | **(773) 344-6850** | **1956** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1649 E 50th Street, Apt 1-20e, Chicago, IL 60615** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **CITY OF CHICAGO** | **500 or More** | **(312) 744-8395** |

| Street Address | City, State and ZIP Code |
|---|---|
| **Department Of Finance, Payment Processing Division, 333 S. State, Chicago, IL 60604** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | IV 2 9 2017 | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN<br>☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION<br>☐ OTHER (Specify) | Earliest Latest<br>**11-29-2017**<br>☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with Respondent in or around February 2008. My current position is Fiscal Policy Analyst. Respondent is aware of my disability. I requested a reasonable accommodation which was not granted. Additionally, I have been subjected to harassment and different terms and conditions of employment, including, but not limited to, alternate assignment and extra scrutiny.

I believe that I have been discriminated against because of my disability, and in retaliation for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended. I believe that I have been discriminated against because of my race, Black, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Nov 29, 2017**<br>Date | *Valerie Tolson*<br>Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |